

In The
Court of Appeals
Seventh District of Texas at Amarillo

No. 07-24-00271-CV

IN THE INTEREST OF S.G., J.R., AND J.R., CHILDREN

On Appeal from the 137th District Court
Lubbock County, Texas
Trial Court No. DC-2021-FM-0906, Honorable John J. "Trey" McClendon III, Presiding

February 14, 2025

MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

NG, acting pro se, appeals the trial court's final order terminating her parental rights to three of her children, SG, JR, and JR. The statutory grounds found by the trial court as warranting termination were § 161.001(D), (E), and (O) of the Texas Family Code. Mother raises multiple complaints which we categorize into seven issues. We affirm.

*Background*

Mother and father had four children together. The Department of Family and Protective Services (Department) was alerted to the death of one of those children while the family lived in a hotel room. In the family hotel room were a loaded, unsecured

firearm, evidence of drug use/possession, and evidence of check forgery. This was not the first time the Department had interactions with the family. Earlier interactions concerned allegations of neglect or abuse.

The Department removed the surviving children and implemented a family service plan by order of the court. The parents largely failed to comply with same. And, at the termination hearing, the associate judge found both one or more statutory predicate grounds for termination and that the best interest of the children favored termination. Mother requested a de novo hearing.

Mother represented herself and testified remotely at the de novo hearing. By then, she had given birth to another child with the same father and moved to California to live with her mother. Father was incarcerated at the time of the de novo hearing. And at the end of the proceeding the district court likewise found by clear and convincing evidence that predicate statutory grounds (D), (E), and (O) coupled with the best interest of the children required termination of parental rights. Only mother appealed.

### First, Second, and Third Issues: Indigence

Mother's first three issues sound in terms of challenges to the trial court's failure to deem her indigent for purposes of appointed counsel and a free appellate record. We overrule the issues.

An appellate court has no duty to brief issues for an appellant. *In re L.M.B.*, No. 07-19-00147-CV, 2019 Tex. App. LEXIS 8420, at *14 (Tex. App.—Amarillo Sept. 17, 2019, no pet.). Rather, the onus is on the appellant to file a brief containing "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." TEX. R. APP. P. 38.1(i). Should the brief fail to contain appropriate record

2

citations or a substantive analysis pertinent to the issue, the latter is waived. *See In re L.M.B.*, 2019 Tex. App. LEXIS 8420, at *14–15. And, it matters not that the appellant acts pro se; such litigants also are bound to follow the rules of procedure requiring citation to authority, citation to the record, and the provision of substantive analysis. *See In re J.S.B.*, No. 07-23-00308-CV, 2024 Tex. App. LEXIS 2990, at *1 (Tex. App.—Amarillo Apr. 30, 2024, no pet.) (mem. op.).

Here, mother proffered conclusory argument without citation to the appellate record. Though the contentions encompass allegations of due process, indigence, the denial of an appellate record, the timing of hearings, and her financial status, she couples those contentions with no substantive explanation. Nor does she utilize citation to record excerpts to support her contentions. And, though she mentioned various legal authorities, they were not accompanied with substantive explanation illustrating her entitlement to relief. Instead, she uttered undeveloped points like:

1) "By delaying and denying Appellant access to the appellate record, the trial court deprived her of the ability to challenge its decision effectively. The appellate process requires timely access to transcripts and records to ensure meaningful review";

2) "The imposition of $1,705 in transcript fees for a 310-page record not only unreasonable but also creates an undue burden on Appellant, given her documented financial hardship. Such costs effectively bar her access to appellate remedies, violating her right to due process as established in ML.B. V. S.L.J., 519 U.S. 102 (1996)"; and

3) "Appellant received inadequate notice of critical court proceedings, including an abatement hearing scheduled with less than 24 hours notice. This lack of proper notice undermined her ability to prepare and respond, further violating her due process rights."

The foregoing statements may describe the "what" of the alleged problem. Yet, a litigant must tie that "what" with substantive explanation illustrating the "why" and "how,"

3

while directing us to those parts of the record illustrating her complaint. The "why" and "how" is absent here. Indeed, she never explained why income approximating $42,000 a year rendered her indigent for purposes of a free record or appointed counsel. Nor did she explain how the trial court denied her due process or acted unreasonably in permitting her opportunity to proffer supplemental data supporting her claim of impoverishment, an opportunity she apparently eschewed. In other words, mother fails to provide us the "why" and "how" when questioning the trial court's decision. Again, we have no obligation to create argument for her or sua sponte parse through the record for supporting evidence.

We afforded mother an opportunity to correct these deficiencies. Though she apparently accepted the chance by tendering another brief, the deficiencies remained. So, her inadequate briefing results in her arguments being waived.

### Fourth Issue: Violation of Child Welfare Policies

In her fourth issue, mother contends that the Department violated child welfare policies by failing to prioritize relative placement per the Texas Family Code and to make reasonable effort to reunify the family. She globally categorizes her complaints as the Department's "inaccurate narrative," "coercive tactics," "reliance on unsubstantiated allegations of neglect and substance abuse without providing sufficient support services to Appellant," and failure "to provided clear documentation of efforts to address Appellant's deficiencies as a parent." Yet, nowhere does she specify or otherwise cite to the narrative, tactics, unsubstantiated allegations or the like, of which she complains. *See Leon-Gomez v. State*, No. 06-18-00144-CR, 2019 Tex. App. LEXIS 1876, at *7 (Tex. App.—Texarkana Mar. 13, 2019, no pet.) (mem. op.) (noting the appellant's burden to identify the specific evidence deemed inadmissible). Nor did she accompany her

4

categorizations with substantive analysis explaining the nature of her criticisms. Again, an appellate court has no duty to brief issues for an appellant. So, we conclude mother waived this issue as well. *See Choice Asset Mgmt., Inc. v. CIT Tech. Fin. Servs.*, No. 07-12-00304-CV, 2013 Tex. App. LEXIS 11584, at *5 (Tex. App.—Amarillo Sept. 11, 2013, no pet.) (mem. op.) (concluding the issues waived because the appellant failed to specify the particular evidence under attack and accompany the complaints with substantive analysis).

### Fifth and Sixth Issues: Sufficiency of the Evidence

In her fifth issue, mother apparently challenges the sufficiency of the evidence to support termination. Her arguments here are similarly conclusory and unsupported with citation to the record. Indeed, she proffers the three following general characterizations of the Department's evidence in support of her sufficiency argument: 1) "[a]llegations of substance abuse without corroborating evidence, such as lab-confirmed drug tests"; 2) [c]laims of neglect that were contradicted by Appellant's documented compliance with service plans and negative drug tests"; and 3) "[u]nverified statement from foster parents and caseworkers, which do not meet the evidentiary threshold required for termination." So too does she mention *Trinsey v. Pagliaro*, 229 F. Supp. 647 (E.D. Pa 1964), while advancing her contention that the Department's reports contained unverified, inadmissible allegations insufficient to support termination. But again, those allegations go unaccompanied with reference to specific evidence, citation to the record, and substantive analysis.[1] Thus, they too are waived due to inadequate briefing.

---

[1] An example of the deficiency consists of appellant categorizing evidence as hearsay or otherwise inadmissible for various legal reasons. While our review of the record led us to encounter instances of hearsay, none met with objections from appellant at trial. So, assuming that those instances were the ones she had in mind, the lack of objection rendered the evidence subject to consideration by the factfinder.

5

Nevertheless, the potential effect of terminating parental rights on (D) and (E) of § 161.001(b) of the Family Code (as occurred here) causes us pause.[2] It could result in later termination of the parental relationship with other children under (M). *See In re N.G.*, 577 S.W.3d 230, 234–35 (Tex. 2019) (per curiam); *see also* TEX. FAM. CODE ANN. § 161.001(b)(1)(M) (permitting the termination of rights if the parent "had his or her parent-child relationship terminated with respect to another child based on a finding that the parent's conduct was in violation of Paragraph (D) or (E) or substantially equivalent provisions of the law of another state"). Given this unique situation and potentially adverse future impact, we conduct a sua sponte analysis of the record to determine whether evidence supports the trial court's findings that both or either of those statutory provisions allowed termination. And, we do so under the legal sufficiency standard described in *In re K.M.L.*, 443 S.W.3d 101, 112–13 (Tex. 2014).

The record reveals that the family had a history of Department involvement, there having been at least three prior investigations based on allegations of abuse or neglect. At the time the children were removed, the Department had been alerted of the sudden, unexplained death of the third-born child. The autopsy findings noted a slight brain bleed in the young child. The official cause and manner of death were described as

*Niche Oilfield Servs., LLC v. Carter*, 331 S.W.3d 563, 571 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (stating that hearsay to which no one objected may be considered in analyzing the sufficiency of the evidence). Simply put, her allegations liken to the *ipse dixit* we encountered and rejected in *Choice Asset Mgmt.*, 2013 Tex. App. LEXIS 11584, at *5.

[2] Subsection (D) requires a showing that the environment in which the child was placed posed a danger to the child's physical or emotional health. *In re T.N.*, No. 07-22-00097-CV, 2022 Tex. App. LEXIS 6424, at *4 (Tex. App.—Amarillo Aug. 25, 2022, no pet.) (mem. op.). Subsection (E) permits termination when the parent engaged in conduct or knowingly placed the children with persons who engaged in conduct which endangered the children's physical or emotional well-being. *Id.* at *4–5. Termination may occur per (O) when the parent fails to comply with the provisions of a court order establishing the actions necessary to obtain the return of a child removed for abuse or neglect and within the conservatorship of the Department of not less than 9 months. TEX. FAM. CODE ANN. § 161.001(b)(1)(O).

undetermined, though. Furthermore, within the hotel room wherein the family stayed at the time of the child's death, authorities found disarray, bullets, an unsecured handgun on an open shelf, baggies containing remnants of what appeared to be marijuana, a printer, copies of checks made payable to individuals other than those found in the hotel room, and checks appearing to be undergoing alteration.[3] Mother, father of several of the children, and the children themselves had resided in these conditions for at least three days.

Additionally, the father had an extensive criminal history, including allegations of the unauthorized use of a vehicle, engaging in organized crime, unlawfully carrying a weapon as a felon, theft, and possession of controlled substances. Mother admitted to knowing of this history, as well. And, at the time of the de novo hearing, father was incarcerated, though mother remained in contact with him. *See In re K.N.*, No. 07-24-00146-CV, 2024 Tex. App. LEXIS 6906, at *4 (Tex. App.—Amarillo Sept. 19, 2024, no pet.) (mem. op.) (noting that criminal conduct is relevant to subsections (D) and (E) because "it subjects children to a life of uncertainty"). And, though mother tended to vacillate when asked about knowing of father's drug use, she indicated that such was his business, not hers.

We also find evidence illustrating that mother tested positive for marijuana at a prenatal visit prior to the birth of the youngest child. *See In re J.W.*, No. 07-23-00290-CV, 2023 Tex. App. LEXIS 8455, at *4 (Tex. App.—Amarillo Nov. 8, 2023, no pet.) (mem. op.) (observing that "drug abuse during pregnancy constitutes conduct that endangers a child's physical and emotional well-being").

---

[3] Both mother and father later were discharged from a cleaning service after their employer discovered that mother or father created forged checks apparently identifying the employer as payor.

7

There was also evidence of domestic violence. Mother denied the occurrence of same, but pictures of her face depicting wounds or bruising admitted into evidence belied her testimony. And, despite the presence of drugs, criminal activity, and violent behavior, mother retained the children within that environment. *In re M.M.,* No. 07-19-00324-CV, 2020 Tex. App. LEXIS 2203, at *7 (Tex. App.—Amarillo Mar. 16, 2020, pet. denied) (mem. op.) (stating that illegal drug use and criminal activity support a conclusion that the child's surroundings endanger his or her physical or emotional well-being under (D)); *see also In re I.L.*, No. 02-18-00206-CV, 2018 Tex. App. LEXIS 8967, at *13–14 (Tex. App.—Fort Worth Nov. 1, 2018, no pet.) (mem. op.) (stating that a parent's engagement in domestic violence, illegal drug use that persists, engagement in criminal activity exposing the parent to incarceration, subjecting the child to a life of uncertainty and instability, and failure to participate in services constitute evidence of endangerment under (E)). The Department also feared she would resume her relationship with father once he was released from prison. To that we add evidence of one child fearing father. Per that evidence, the child would hide from him.

Though related to the finding of (O) rather than (D) and (E), we nevertheless encounter evidence pertaining to mother's failure to perform all her court-ordered services. She completed parenting classes but not her therapy classes. And, despite being ordered to undergo drug testing, mother missed 12 of the 19 tests ordered. Approximately 21 opportunities to visit her children also were offered her; she attended only six, however. Nor did mother provide verification of employment to the case worker, as required. The case worker also endeavored to visit mother's home six times; mother failed to appear or permit the inspection each time for some reason. So too did she leave

8

Texas without informing the Department and failed to provide proof of income and stable employment. All evinced instances of non-compliance with substantive terms of the court-ordered service plan. *In re R.J.G.*, 681 S.W.3d 370, 383 (Tex. 2023) (stating that to justify termination under (O), the noncompliance must not be trivial or immaterial in light of the nature and degree of the parent's compliance and the totality of the plan's requirements).

The foregoing provides evidence upon which a factfinder could form a firm conviction and belief that (D), (E), and (O) warranted termination of mother's parental rights to the children. *See In re R.J.G.*, 681 S.W.3d at 383; *In re M.M.*, 2020 Tex. App. LEXIS 2203, at *7; *In re I.L.*, 2018 Tex. App. LEXIS 8967, at *13–14. As for the best-interest prong of the analysis, *see* TEX. FAM. CODE ANN. § 161.001(b)(2) (requiring that termination be in the best interest of the child), evidence exists supporting a like conclusion that termination favored the best interest of the children. Included in our assessment of the evidence touching this prong is the evidence discussed above as proving one or more of the statutory prerequisites to termination. It depicts an environment endangering the children and a parent unwilling or unable to complete substantive steps necessary to secure return of her children. Next, the children adapted to and flourished in their current environment with their current caretaker, according to other evidence. That caretaker provided for their needs and hoped to adopt the children, with adoption being the goal of the Department. Other evidence depicts a strong bond between the children and their current caretaker, as well. The children, though no older than six, also expressed a desire to remain with their caretaker. And, despite mother withholding from the Department notice of her move to California, the Department

9

discovered same. It then endeavored to determine whether that house was appropriate for the children. Pursuant to that effort, the State of California performed an inspection of the home and rejected its suitability for the children.

We overrule mother's fifth and sixth issues.

### Issue Seven: Jurisdiction

The remaining issue concerns the jurisdiction of the trial court. Mother believes it was non-existent but fails to specify or explain why. That too would result in waiver were it not for our obligation to assess the presence or absence of jurisdiction sua sponte.

The Texas Constitution provides district courts "exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body." TEX. CONST. Art. V, § 8.

Here, the district court was vested with jurisdiction to adjudicate this suit affecting the parent-child relationship. *See* TEX. FAM. CODE ANN. § 155.001(a) ("[A] court acquires continuing, exclusive jurisdiction over [] matters . . . in connection with a child on the rendition of a final order."); *In re S.J.S.*, No. 04-22-00249-CV, 2022 Tex. App. LEXIS 7896, at *4 (Tex. App.—San Antonio Oct. 26, 2022, pet. denied) (mem. op.); *see also In re I.D.C.*, No. 10-18-00092-CV, 2018 Tex. App. LEXIS 9686, at *3 (Tex. App.—Waco Nov. 28, 2018, no pet.) (mem. op.) (stating that "[t]he district court's jurisdiction includes cases affecting the parent-child relationship").

And, the record before us demonstrates that the trial court did not lose jurisdiction due to time constraints applicable to parental-rights termination cases. *See* TEX. FAM. CODE ANN. § 263.401(a). Following the granting of a 180-day extension, the trial court

10

set the dismissal date for June 10, 2023. *See id.* § 263.401(b). Trial commenced on June 9, 2023, the record of which reveals a well-developed exchange, and continued on August 25, 2023, at the end of which the associate judge signed its order terminating the mother's rights to the children. Further, the associate judge was authorized to hear the matter as referred by the district court. *See id.* § 201.005(a) (authorizing referring court to "refer to an associate judge any aspect of a suit or action, including any matter ancillary to the suit or action, over which the court has jurisdiction under [Title 5]." And, though a request to the referring court for a de novo hearing was timely made and that court was obligated to hold the de novo hearing within 30 days, *see id.* § 201.015(f), the delay in doing so is not jurisdictional. *In re H.M.G.,* No. 01-21-00657-CV, 2023 Tex. App. LEXIS 41, at *4–5 (Tex. App.—Houston [1st Dist.] Jan. 5, 2023, no pet.) (mem. op.) (holding § 201.015(f) to be non-jurisdictional); *In re L.R.*, 324 S.W.3d 885, 888–89 (Tex. App.—Austin 2010, orig. proceeding) (same).

In sum, we found no jurisdictional obstacles barring the trial court from ruling as it did. And, upon overruling all of mother's complaints raised on appeal, we affirm the trial court's judgment terminating mother's parental rights to SG, JR, and JR.[4]

Per Curiam

---

[4] *See* TEX. R. APP. P. 49.1.

11